Cecil Lamar **LEWIS**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 384S101.

Supreme Court of Indiana.

Dec. 20, 1985.

Robert R. Garrett, Appellate Public Defender's Office, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of Robbery, a class A felony, I.C. § 35–42–5–1 and a habitual offender determination, I.C. § 35–50–2–8. A jury tried the case. Appellant received a thirty year sentence for robbery; the trial court enhanced this sentence thirty years as a result of the habitual offender determination for a total of sixty years.

Appellant raises three issues on appeal: (1) whether he was denied his right to a speedy trial; (2) whether the trial court erred in refusing his tendered instruction # 1; and, (3) whether trial court erred in denying his motion in limine.

These are the facts from the record which tend to support the determination of guilt. On April 25, 1983, appellant sold the victim, Waldo Fannin a water heater for five dollars. They took the water heater to Fannin's place. Afterwards, Fannin went to a house with appellant in order to examine an old refrigerator that appellant wanted to sell. When they arrived, appellant went inside the house for 5–10 minutes. He then reappeared, and they both went into the house. Fannin saw an old refrigerator in the basement of the house; however, he did not desire to buy it, and he left the house. Outside, appellant said, "he had a new refrigerator," and he convinced Fannin to go back inside the house. Fannin re-entered the basement, and then appellant beat him in the face. Appellant took two wallets from Fannin. Appellant also took Fannin's .25 caliber pistol, threatened to kill him, and then threw the pistol to the ground. After appellant left, Fannin went to a store and telephoned the police.

I

Appellant argues that the State's filing of a habitual offender information effectively denied him a speedy trial. On June 3, 1983, the State filed an information charging appellant with class A robbery. On June 7, 1983, appellant moved for a speedy trial. On June 22, 1983, in response to his motion for a speedy trial, the trial court set the trial date as a primary setting on August 29, 1983, and as a secondary setting on July 11, 1983. The record discloses that appellant did not object to either of these settings. On July 8, 1983, the State filed a habitual offender information. On July 11, 1983, appellant moved to strike and dismiss the habitual offender information. The trial court denied the motion, and it reaffirmed over appellant's objection the primary setting for trial on August 29, 1983. The record of proceedings before us does not supply a definitive reason for the passing of the case for trial on July 11. On July 18, 1983, appellant filed a pro se motion to release. The trial court denied the motion. On August 8, 1983, the State amended the habitual offender information. On August 18, 1983, appellant moved to strike and dismiss the amended habitual offender information. The trial court denied the motion. On August 29, 1983, the case went to trial.

CR 4(B) states that a defendant "... shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act ..." Here, when the trial court initially set the trial date as a primary setting on August 29, 1983, appellant did not object. As a result, his right to a speedy trial within the CR 4(B) time limits was not properly preserved, and he cannot now claim on appeal that his right to a speedy trial was violated. *Rutledge v. State* (1981), Ind., 426 N.E.2d 638.

Appellant also claims that the State's filing of the habitual offender information interfered with his right to a speedy

trial. On the basis of this record we do not discern a causal relationship between the State's filing of the habitual offender information and his right to a speedy trial. Even if there were, we do not see how it served to impinge upon the right since the case proceeded to trial on the primary setting: August 29, 1983.

## II

■ Appellant argues that the trial court erred in refusing his tendered instruction # 1 which described class C robbery as a lesser included offense of class A robbery.

A three-part test is employed to determine whether a trial court has erred in its refusal to give a tendered instruction:

"In considering whether any error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction correctly states the law, *Gayer v. State* (1965), 247 Ind. 113, 210 N.E.2d 852; (2) whether there is evidence in the record to support the giving of the instruction, *Wathen v. State* (1965), 246 Ind. 245, 204 N.E.2d. 526; (3) whether the substance of the tendered instruction is covered by other instructions which are given, *Hash v. State* (1972), 258 Ind. 692 [284 N.E.2d 770].

*Richie v. State* (1981), Ind., 426 N.E.2d. 389. The refused instruction is set forth here:

ROBBERY C is a lessor included offense to the crime of Robbery A, which is charged in the Information, and is defined by statute in Indiana in pertinent part as follows:

A person who knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person commits ROBBERY, a Class C Felony.

Here, the prosecution presented the testimony of the victim that he was struck several times, knocked to the floor, bled profusely, and was transported to the hospital by ambulance. The surgeon who treated the victim at the hospital emergency room testified that his patient had suffered multiple lacerations on the face and about one eye, and that the lacerations were closed with sutures. Medical records introduced disclosed that the victim may have lost consciousness for a short time during the beating. This proof is clear and undisputed; consequently there was no evidence to support the giving of appellant's lesser included offense instruction. *McNary v. State* (1981), Ind., 428 N.E.2d. 1248.

## III

■ Appellant argues that the trial court erred in denying his oral motion in limine which sought to prevent the State from impeaching him with the alleged prior felony convictions charged in the habitual offender information if he testified during the guilt phase of the trial. The rationale of the motion was that a disclosure of previous convictions during the trial on the robbery charge would prejudice the jury on the habitual offender charge and, in effect, deprive him of his privilege against self-incrimination.

This Court considered and rejected appellant's argument in *Williams v. State* (1981), 275 Ind. 603, 419 N.E.2d. 134, which is set forth in pertinent part here:

He further argues that, had he been impeached, he would have provided the State with evidence to convict him on the habitual offender charge. Thus, he claims, he was faced with the dilemma of acquitting himself upon the robbery charge and convicting himself on the habitual offender charge. * * *

We have often stated that the status of habitual offender is not an "offense" but rather a justification for an enhanced penalty on the charge(s) for which the defendant has been tried and convicted. Examined in this light, the dilemma of which the defendant complains, is a phantom. If the defendant chooses to testify, and the jury acquits him there is no habitual offender phase of the proceedings. If he is convicted, the prosecutor bears the same burden of proving the

defendant's habitual offender status as if the defendant had not testified and had not been impeached by his criminal record. There is no merit to the defendant's contention.

*Williams, supra,* 419 N.E.2d at 137.

The trial court did not err in denying his oral motion in limine. The conviction and sentence are affirmed.

GIVAN, C.J., and PRENTICE, PIVARNIK, and SHEPARD, JJ. concur.