Robert PINEGAR, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 71A03–8901–CR–00002.

Court of Appeals of Indiana,
Third District.

May 3, 1990.

Kenneth M. Hays, South Bend, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Robert Pinegar was convicted of murder. On appeal he contends the state failed to overcome his claim of self defense and that the court erred by refusing to instruct the jury concerning voluntary manslaughter.

The events in question took place on April 1, 1988. At about 2:00 p.m. Pinegar and his brother met Tony Niegosinki on the street and the three went to Niegosinki's apartment for drinks. During conversation at the apartment Pinegar stated that he did not lift weights and, displaying a knife, said that if anyone messed with him he would just kill them.

About 6:30 p.m. Mary Chiszar and Christine McRay drove to the Green Star Tavern to pick up Chiszar's husband, Frank, after his softball practice. While there they had a couple of drinks and McRay told Frank Chiszar that Pinegar kept returning to her mother's house and was bothering her. McRay was living at her mother's house and, apparently, Pinegar had also lived there until March 21st.

The three left the Green Star and went to Frank's Place, a bar and carry-out store near McRay's residence. McRay expressed concern that Pinegar might come in. In fact, there was some testimony that the trio went to Frank's Place at Chiszar's suggestion expecting Pinegar to come there. Frank Chiszar reassured McRay and asked the liquor store manager to let him know if Pinegar came in. The three went into the bar and again ordered drinks.

About 8:30 p.m. Pinegar entered the carry-out section. The manager informed Frank Chiszar of Pinegar's presence and Chiszar left the two women saying he was going to talk to Pinegar.

When the manager returned to the store area he looked out the window and saw Chiszar and Pinegar outside talking. Another witness saw Chiszar push Pinegar and then the two began scuffling and went to the ground, continuing to scuffle. As the witness got out of his car, Chiszar "fell flat on his face" and then Pinegar ran away. Two other witnesses saw the fight and observed Pinegar on top of Chiszar and saw him strike Chiszar several times in the chest. A knife was found a few feet from Chiszar's body. He died as the result of stab wounds. Pinegar admitted stabbing Chiszar but asserted that he did so in self defense.

■ We must reject his contention that the evidence was insufficient to overcome the claim of self defense.

While the state must prove beyond a reasonable doubt Pinegar's guilt, appellate review is limited to ascertaining whether the evidence and reasonable inferences therefrom favorable to the verdict are sufficient to sustain it. *See, e.g., Spinks v. State* (1982), Ind., 437 N.E.2d 963.

In order to justify the use of *deadly* force in self defense under the circumstances present here, a party must reasonably believe that such force is necessary to

prevent death or serious bodily injury to himself. IC 35–41–3–2(a); *Brooks v. State* (1982), Ind., 434 N.E.2d 878. Under the evidence presented the jury might well have concluded that Pinegar was not in such real or apparent risk of death or great bodily harm as to justify his use of deadly force. Accordingly, the evidence sustains the verdict.

Whether the jury should have been instructed on voluntary manslaughter is, however, another matter.

■ Indiana law follows a two step analysis to determine whether a proffered instruction defining a lesser included offense must be given or may be refused. *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208.

■ In the first step the court must determine whether the lesser offense in question is includible. It is if either (a) it is inherently included because the greater charged offense cannot be committed without necessarily committing all of the elements of the lesser offense; or (b) it is possibly included because the factual allegations of the indictment or information allege commission of all the elements of the lesser offense. *Jones v. State* (1982), Ind., 438 N.E.2d 972; *Roddy v. State* (1979), 182 Ind.App. 156, 394 N.E.2d 1098.

■ Under Indiana law the existence of a sudden heat of passion resulting from adequate provocation reduces what would otherwise be murder to voluntary manslaughter. IC 35–42–1–3; *Johnson v. State* (1988), Ind., 518 N.E.2d 1073; *Fox v. State* (1987), Ind., 506 N.E.2d 1090. Yet both the statute defining the offense[1], and the case law make clear that the question of sudden heat is a mitigating factor and not an element of the offense of voluntary manslaughter. In other words, the elements of the two offenses are identical. There is no implied element of the absence of sudden heat in a charge of murder. *Finch v. State* (1987), Ind., 510 N.E.2d 673.

Since the elements of the two offenses are identical, it must follow that for pur-

poses of the first-step analysis, voluntary manslaughter is an inherently included offense to a charge of murder. *See O'Conner v. State* (1980), 272 Ind. 460, 399 N.E.2d 364; *Barker v. State* (1958), 238 Ind. 271, 150 N.E.2d 680.

Under the second step of analysis we must determine whether the evidence adduced at trial supports giving an instruction on the lesser offense. *Lewis v. State* (1985), Ind., 486 N.E.2d 526. In application that requires the court to look to the element which distinguishes the greater from the lesser offense. *Wojtowicz v. State* (1989), Ind., 545 N.E.2d 562.

■ If there is substantial evidence that the distinguishing element exists, then the court must determine whether the evidence raises a serious conflict or dispute concerning that existence. Only if such a conflict exists must the lesser offense instruction be given. *See, e.g., Jones v. State* (1986), Ind., 491 N.E.2d 980; *Averhart v. State* (1984), Ind., 470 N.E.2d 666. While the court has employed somewhat varying expressions in assessing the standard of review to be applied, the thrust of its decisions appears to closely approximate the position taken by the Model Penal Code:

> The Court shall not be obligated to charge the jury with respect to an included offense *unless* there is a *rational basis* for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

(emphasis added) ACI, Model Penal Code, § 1.07(5).

The second step of review examines whether there is a substantial dispute in the evidence concerning the existence of the distinguishing element between the greater and lesser offenses. If there is not, then the lesser offense instruction may be properly refused. *See, e.g., Owens v. State* (1989), Ind., 544 N.E.2d 1375; *Wedmore v. State* (1988), Ind., 519 N.E.2d 546.

We turn now to Pinegar's claim that the court erred in refusing to instruct on voluntary manslaughter as a lesser offense.

---

**1.** IC 35–42–1–3(b) provides, "The existence of sudden heat is a mitigating factor that reduces

what otherwise would be murder under section 1(a) of this chapter to voluntary manslaughter."

Since the elements of the two offenses are identical, a charge of voluntary manslaughter is inherently included within the charge of murder, and the first step analysis is satisfied. *Palmer v. State* (1981), Ind., 425 N.E.2d 640.

■ As between murder and voluntary manslaughter, the distinguishing feature (although not properly an element of the offense) is the presence of sudden heat. As a mitigating factor, the burden initially rests with the defendant to establish the existence of an issue concerning sudden heat. However, once such evidence is introduced into the trial, the burden of proof rests with the state to negate the "defense" beyond a reasonable doubt. *Finch v. State* (1987), Ind., 510 N.E.2d 673. Ordinarily, whether there has been adequate provocation and killing in a sudden heat of passion are questions for the jury. *Ronk v. State* (1984), Ind., 470 N.E.2d 1337.

■ Here there was substantial evidence that the victim sought the confrontation, struck the first blow and engaged in a fight with the defendant. There was evidence of provocation and possible sudden heat such that a rational basis existed for a finding that Pinegar was not guilty of murder but guilty of voluntary manslaughter. Therefore, the question should have been submitted to the jury.

The state argues, however, that by claiming self defense Pinegar took a position inconsistent with a claim of voluntary manslaughter so that the instruction was properly refused. It relies on *Ward v. State* (1988), Ind., 519 N.E.2d 561. In *Ward* the court held that any error in refusing a voluntary manslaughter instruction had been waived for the failure to tender signed and numbered instructions. The court also noted that the defendant's "version of the facts presents a question of self-defense not sudden heat...." 519 N.E.2d 563. We do not take that statement as intended to preclude, as inherently inconsistent, claims of self defense and killing in a sudden heat.

As the court earlier explained in *Palmer v. State* (1981), Ind., 425 N.E.2d 640, 644:

The voluntary manslaughter statute creates an affirmative defense of sudden heat akin to self-defense. The latter is, if successful, a complete defense while the defense of sudden heat is only a partial defense because it reduces the seriousness of the crime.... It is akin to self-defense in that its introduction into the case (either through the State's own evidence or through the defendant's evidence or both) places a burden upon the state to negate the defense beyond a reasonable doubt and calls for an instruction on the lesser included offense of voluntary manslaughter.

Clearly, the court in *Palmer* did not consider that a claim of self defense was necessarily inconsistent with finding killing in a sudden heat. Rather, sudden heat is in the nature of a partial defense that should be presented to the jury when supported by the evidence and requested by the state or the defendant. That view certainly appears analytically correct in instances such as those where an accused is actually provoked and in the sudden heat of passion exceeds the permissible bounds of self defense and kills someone. The jury should be allowed to determine the elements of self defense and whether there was adequate provocation and, in fact, killing in a sudden heat.

It follows that the court erred in refusing to instruct on voluntary manslaughter.

Reversed and remanded for a new trial.

HOFFMAN, P.J., and BAKER, J., concur.