**Jack GRIFFIN, Jr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 59S00–9206–CR–486.

Supreme Court of Indiana.

Dec. 16, 1994.

Randall T. Fearnow, McNamar Fearnow & McSharar, P.C., Brett R. Fleitz, Steers Sullivan, P.C., Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

## DIRECT APPEAL

SULLIVAN, Justice.

A jury found Jack Griffin, Jr., guilty of Murder.[1] Griffin appeals his conviction in part on grounds that the trial court erroneously refused to give a voluntary manslaughter instruction. We agree that this was reversible error.

### Instruction on Voluntary Manslaughter

Griffin tendered instructions that defined voluntary manslaughter and sudden heat. The trial court ruled there was no evidence that Griffin acted under sudden heat and refused the tendered instructions. Griffin argues that the failure of the trial court to instruct the jury on voluntary manslaughter was reversible error.

■ A trial court erroneously refuses a tendered instruction if (1) the tendered instruction correctly states the law; (2) there is evidence in the record to support the giving of the instruction; and (3) the substance of the tendered instruction is not covered by other instructions given. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463, 466. There is no dispute that Griffin's tendered instructions met requirements (1) and (3). Thus, our focus is solely on whether there was evidence in the record to support giving the instructions.

■ For purposes of determining whether the evidence is such that a defendant charged with murder is entitled to an instruction on voluntary manslaughter in a murder prosecution, the court uses the same analysis as that for lesser included offenses. *See, e.g., Reinbold,* 555 N.E.2d at 467. The court engages in a two-step inquiry. *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 538, *reh'g denied.* First, the court determines whether the offense on which an instruction is requested is included in the offense charged. *Id.* When the two offenses are murder and voluntary manslaughter, the answer to this question is always "yes," because the elements of the two crimes are identical. Voluntary manslaughter is simply murder mitigated by evidence of "sudden heat." Ind.

Code § 35–42–1–3 (1993); *Roark v. State* (1991), Ind., 573 N.E.2d 881, 882. The second inquiry is whether there is evidence to support the giving of the instruction. *Lynch,* 571 N.E.2d at 539. The standard for determining whether an instruction on voluntary manslaughter is proper is not a high one: the instruction is justified if there is "any appreciable evidence of sudden heat." *Roark,* 573 N.E.2d at 882.

■ Sudden heat requires "sufficient provocation to engender ... passion." *Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1077. Sufficient provocation is demonstrated by "anger, rage, sudden resentment, or terror that is sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Id.*

■ The following evidence was before the jury. Griffin was a farmer and small businessman. He was active in community affairs such as the Farm Bureau and the Young Farmers Organization. He was also a Sunday school teacher, public school substitute teacher, and Republican precinct committeeman. Griffin and the victim were married in 1978. There was evidence of marital discord. In particular, the victim was romantically involved with another man and had announced that she was unhappy in her relationship with Griffin. Griffin testified at trial that between May 11 and May 18, he slept only four or five hours. He also testified that he spent some of his time that week investigating his wife's activities and trying to learn the identity of her boyfriend.

The killing took place on May 18, 1991, in a trailer where the couple lived. Griffin was in the trailer when his wife arrived. She announced that she had come to help Griffin pack his things and insisted that Griffin leave the trailer that night. This came as a surprise to Griffin, who did not want to leave. He wanted his wife to participate in marriage counseling with him.

During the course of this confrontation, his wife emphasized she wanted Griffin "out of her life," and pointed a small pistol at Griffin

---

1. Ind.Code § 35–42–1–1(1) (1993).

that she had brought with her to the trailer. A brief struggle ensued, during which Griffin wrestled the gun away. Another argument followed, during which his wife said "If I made love to you one more time ... would that let your mind accept that I don't hate you, but I just want out of this marriage and we could end on a good note?" His wife partially disrobed and repeatedly urged Griffin to put down the gun and remove his clothes. At that point, she grabbed at Griffin's belt and, according to Griffin, the gun discharged accidentally. Griffin has no recollection regarding how or why the gun discharged again. An autopsy revealed the victim had been shot a total of 5 times.

Realizing that something dreadful had happened, Griffin replaced his wife's clothes, and proceeded to surrender himself at the Sheriff's office.

A court-appointed psychiatrist testified that Griffin was "experiencing strong and overwhelming emotions" at the time of the alleged criminal conduct, and that his ability to control aggressive impulses was likely impaired as a result.

We find sufficient evidence in this record which, if believed by the jury, could have established sudden heat. Shortly before the shooting, Griffin was informed by the victim that he should remove all his things from the trailer that the couple shared. To emphasize her point, the victim pointed a loaded gun at Griffin. The victim continued to insist that she and Griffin have intimate relations while at the same time making clear her decision that the marriage was over. Griffin had bruises and scratches on his arms consistent with a struggle. The victim was shot with a gun that she, not Griffin, had brought to the trailer. The confusing mixed signals—the affair, divorce, gun, and seduction—certainly constituted appreciable evidence of sufficient provocation to engender passion and, therefore, presented a question for the jury.

We have regularly seen trial courts give voluntary manslaughter instructions in similar factual settings. *See, e.g., Elliott v. State* (1988), Ind., 528 N.E.2d 87, 88 (victim continued to tease defendant despite defendant's request to be left alone; defendant obtained gun, returned to victim, and asked victim to accompany him around a corner where defendant shot victim); *Smith v. State* (1987), Ind., 502 N.E.2d 485, 489 (defendant armed herself with a gun and bullets on her way to the victim's business where she shot victim 13 times; defendant had previously stated she blamed the victim for her marital difficulties and wanted the victim dead); *Finch v. State* (1987), Ind., 510 N.E.2d 673, 674 (defendant shot victim 8 times, left threatening note at home of victim's girlfriend, and wrote letters announcing her intention to kill victim because of the girlfriend).

The State refers us to *Rowe v. State* (1989), Ind., 539 N.E.2d 474, as support for the proposition that Griffin was not entitled to the instruction because he denied the intent to kill that is required for conviction of both murder and voluntary manslaughter. *Rowe* is not controlling. Although in *Rowe* this Court held the instruction was properly refused because the defendant argued that evidence relating to his intoxication and insanity defenses justified giving the instructions, the opinion makes clear there was no evidence of sudden heat. *Id.* at 477. In contrast, Griffin presented evidence from which the jury could have found circumstances amounting to sudden heat such as required giving the tendered instructions. The trial court is not limited to considering only one defense offered by defendant when the instruction is requested. *See, e.g., Storey v. State* (1990), Ind., 552 N.E.2d 477, 480 (defendant testified that pistol discharged accidentally; jury was instructed on voluntary manslaughter).

The refusal to instruct on voluntary manslaughter when the evidence supports giving of the instruction is reversible error. *Harrington v. State* (1992), Ind., 584 N.E.2d 558, 566 (per curiam), *reh'g denied.* Accordingly, Griffin is entitled to a new trial.

■ We acknowledge that the determination of whether there is "any appreciable evidence of sudden heat" is often difficult to make. Thus, when the question to instruct on a lesser included offense is a close one, it is it is prudent for the trial court to give the instruction and avoid the risk of the expense and delay involved in a retrial. Recent cases

demonstrate this point. *Roark,* 573 N.E.2d 881 (murder conviction vacated and new trial ordered for failure to give voluntary manslaughter instruction); *Lynch,* 571 N.E.2d 537 (same); *Pinegar v. State* (1990), Ind. App., 553 N.E.2d 525, *trans. denied* (same). And as we have previously held, it is not erroneous in a murder trial to give the jury an instruction on voluntary manslaughter, even in the absence of evidence of sudden heat. *Gilley v. State* (1990), Ind., 560 N.E.2d 522, 523–24; *O'Conner v. State* (1980), 272 Ind. 460, 465, 399 N.E.2d 364, 369.

Griffin raises another issue that we elect to address.

### Instruction on Erroneous Acquittal

■ Over Griffin's objection, the trial court gave the following final instruction:

If a defendant is innocent, he should not be convicted erroneously; but if a defendant is guilty, he should not be acquitted erroneously. By acquittal of the guilty, a contempt of the law is aroused among the criminal classes and the safeguards of society are weakened.

Griffin argues that this instruction is unnecessary and irrelevant to the truth-seeking process because it distracts the jury from its sole duty which is the determination of guilt. In addition, argues Griffin, the instruction plays to the jury's fears, appeals to their prejudices, and seeks to incite an unjustified paranoia about the "criminal classes" referred to in the instruction.

Griffin acknowledges that this Court has previously rejected such challenges to this and similar instructions. *See, e.g., Murray v. State* (1982), Ind., 442 N.E.2d 1012, 1021 (and cases cited therein) and, more recently, *Timmons v. State* (1992), Ind., 584 N.E.2d 1108, 1113. In both *Murray* and *Timmons,* this Court concluded that the instruction was not erroneous because the instruction was bracketed by instructions on the presumption of innocence and proof beyond a reasonable doubt. As in *Murray* and *Timmons,* the jury in this case was correctly instructed on the presumption of innocence and the burden of proof. At the same time, this instruction is a constant source of difficulty, both because it clouds the presumption of innocence

and because it risks distracting the jury by its speculation on the sociological impact of erroneous verdicts. We have expressed reservation about the wording of this instruction, *Rogers v. State* (1989), Ind., 537 N.E.2d 481, 486, *reh'g denied,* and we have reviewed at least one case where one of our ablest trial court judges refused to give the instruction. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290, 1302, *reh'g denied.* Given these difficulties and this history, we have concluded that this instruction has outlived its usefulness and disapprove it for future use.

### Conclusion

Accordingly, we reverse Griffin's conviction for murder and grant a new trial.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the conclusion of the majority opinion that the trial judge erred in refusing to give an instruction on manslaughter. In order for it to be proper for a trial judge to give an instruction on manslaughter, he must find that there is evidence of both provocation and sudden heat. *Matheney v. State* (1992), Ind., 583 N.E.2d 1202, *cert. denied,* 504 U.S. 962, 112 S.Ct. 2320, 119 L.Ed.2d 238.

In the present case, appellant testified that when he went to the trailer to talk with his wife, she at first produced a gun and pointed it at him, that he was able to take it away from her, that they had an extended conversation, that during that conversation she tried to seduce him, that while he was holding the gun she grabbed his belt and pulled on it, and that the gun accidentally discharged. However, the evidence showed that while the victim had sustained a non-contact bullet wound to the chest, she also had four other bullet wounds to the chest which were contact wounds.

Although she was wearing a sweater at the time her body was discovered, the sweater did not have bullet holes. Thus, there was evidence that she was not dressed at the time

of the shooting and that the defendant's testimony that he dressed her following the shooting was correct. There was testimony that there was no sign of a struggle in the trailer, that there was an open Bible laying on the table turned to a passage concerning divorce, that appellant had told others after the shooting that his wife had an abortion, thus killed their baby, and that she had voiced her intention to divorce him for another man.

If one accepts appellant's version of the shooting, that it was accidental, then an instruction of voluntary manslaughter would be improper. *Rowe v. State* (1989), Ind., 539 N.E.2d 474. On the other hand, other evidence presented by the State indicated a calculated deliberate murder which would not justify the giving of a manslaughter instruction. *Matheney, supra.*

I find no justification for the giving of a manslaughter instruction. The trial judge should be affirmed.