**Randall WASHINGTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**
**No. 45A03–9609–CR–319.**

Court of Appeals of Indiana.

Sept. 22, 1997.

Rehearing Denied Dec. 3, 1997.

---

Ray L. Szarmach, Szarmach & Fernandez, Merrillville, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

HOFFMAN, Judge.

Appellant-defendant Randall Washington appeals his conviction for voluntary manslaughter, a Class A felony. The facts most favorable to the judgment are recited below.

Lawrence Bradford and Jacqueline Dozier began dating in 1992. In the fall of 1993, however, the relationship ended and Dozier began a friendship with Washington. When Bradford discovered Dozier and Washington's relationship and suspected that the two had become more than friends, Bradford began threatening Washington. On several occasions, Bradford and Washington were seen arguing over Dozier.

On the evening of February 2, 1994, Lawrence Bradford and Kyran Sims arrived at the Blue Max, a nightclub located in East Chicago. The two came in Bradford's black pickup truck to pick up Dozier. Sims remained in the truck while Bradford entered the club. Five minutes later, Bradford exited the club with Dozier and Bradford's friend, Paul Lewis. Bradford and Dozier then entered Bradford's truck.

At the same time, Washington exited the club with his two friends, Baron Moss and Nathaniel Simmons. The group walked across the parking lot of the club to Moss' car. As they walked, Lewis called to Washington and asked him to come to Bradford's truck. Not wanting any trouble, Washington and his friends ignored Lewis and quickly walked to Moss' car. Bradford then drove his truck across the parking lot to Moss' car, leaped out of the truck, and confronted Washington about his relationship with Dozier. Simmons stepped between the two and attempted to quell the escalating situation. At that time, Bradford pulled out a gun and fired one shot. Simmons fell to the ground and rolled under Moss' car. Thinking that Simmons had been shot, Washington reached into the passenger side of Moss' car and grabbed a gun that was lying on the front seat. Washington then turned to run away from Bradford. As he ran, Washington repeatedly fired the gun at Bradford. Bradford died from two gunshot wounds to the chest.

Washington was charged by information with murder, a felony. A jury trial was held. At the close of the State's case, Washington moved for judgment on the evidence. The motion was denied. At the conclusion of the trial, Washington was found guilty of the lesser-included offense of voluntary manslaughter. Washington now appeals the judgment.

On appeal, Washington raises the following issues:

(1) whether the trial court erred in giving a voluntary manslaughter instruction; and

(2) whether the trial court erred in denying Washington's motion for judgment on the evidence.

 Washington first argues that the trial court erred in *sua sponte* and over his objection giving an instruction on voluntary manslaughter. Our supreme court has held that the trial court should apply a three-step test to determine whether the trial court should have given an instruction on a lesser-included offense. *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995). First, the court should determine whether the claimed lesser offense is inherently included in the language of the statute. If the offense is inherently included, then the court should proceed to step three below. *Id.* Second, if the court determines that the alleged lesser-included offense is not inherently included in the crime charged under step one, then it must determine whether the claimed offense is factually included in the crime charged by the charging document. *Id.* Third, if the court determines that the lesser charge is either inherently or factually included, then it must determine whether there is evidence before the jury that the lesser-included offense was committed. *Id.* This part of the test hinges on whether a serious evidentiary dispute exists with respect to the element which distinguishes the greater and lesser offenses. *Lynch v. State*, 571 N.E.2d 537, 539 (Ind.1991).

 Applying the first step to the case at bar, it is clear that voluntary manslaughter is an inherently lesser-included offense of murder. Voluntary manslaughter is simply murder mitigated by evidence of sudden heat. *Griffin v. State*, 644 N.E.2d 561, 562 (Ind.1994). Therefore, having determined that voluntary manslaughter is inherently included, the third step of the *Wright* analysis required the trial court to determine whether there was evidence before the jury that the lesser-included offense was committed.

 Killing in the sudden heat of passion is the feature that distinguishes voluntary manslaughter from murder. Sudden heat is demonstrated by evidence of anger, rage, sudden resentment, or terror that is sufficient to obscure the reason of an ordinary man. *Griffin*, 644 N.E.2d at 562. To support the giving of a voluntary manslaughter instruction, there must be sufficient provocation to induce such passion to render the defendant incapable of cool reflection. *Id.* The standard for determining whether a voluntary manslaughter instruction is proper is not a high one: the instruction is justified if there is "any appreciable evidence of sudden heat." *Id.*

 In the present case, the evidence was sufficient to warrant giving a voluntary manslaughter instruction. The evidence presented at trial showed that as Washington and his friends left the nightclub and approached their car, Paul Lewis, a friend of Bradford's, called to Washington and asked him to come to Bradford's truck. Washington testified that he did not want any trouble, and he and his friends hurried to their car. When Washington refused to approach Bradford's truck, Bradford drove his truck across the parking lot to the car Washington and his friends were attempting to enter, leaped out of the truck, quickly walked over to Washington, and initiated a confrontation. The testimony during the trial established that as Bradford approached Washington, he stated, "I'm going to kill this mother fucker," "I want to talk to you mother fucker," and "I'm going to handle my business." Bradford then pulled out a gun and fired one shot. Washington then reached into the car, removed a gun, and began to run from Bradford. As he ran, Washington fired the gun repeatedly at Bradford.

The determination of whether there is any appreciable evidence of sudden heat is often difficult to make. Thus, as our supreme court stated in *Griffin*, when the question to instruct on a lesser-included offense is a close one, it is prudent for the trial court to give the instruction and avoid the risk of the expense and delay involved in a retrial. *Id.* at 563. A review of cases involving sudden heat demonstrates this point. *See, e.g., Roark v. State*, 573 N.E.2d 881 (Ind.1991) (murder conviction vacated and new trial ordered for failure to give voluntary manslaughter instruction); *Lynch*, 571 N.E.2d 537 (murder conviction vacated and new trial ordered for failure to give involuntary manslaughter instruction); *Pinegar v. State*, 553 N.E.2d 525 (Ind.Ct.App.1990), *trans. denied* (murder conviction vacated and new trial ordered for failure to give voluntary manslaughter instruction). *See also Elliott v. State*, 528 N.E.2d 87, 88 (Ind.1988) (voluntary manslaughter instruction given where victim continued to tease defendant despite defendant's request to be left alone; defendant obtained gun, returned to victim, and asked victim to accompany him around the corner where defendant shot victim); *Storey v. State*, 552 N.E.2d 477, 480 (Ind.1990) (defendant testified that he was acting under uncontrollable rage and anger and that his pistol discharged accidentally, killing the victim; jury was instructed on voluntary manslaughter); *Finch v. State*, 510 N.E.2d 673, 674 (Ind.1987) (voluntary manslaughter instruction given where victim left threatening note at home of victim's girlfriend, wrote letters announcing her intention to kill victim because of girlfriend, and after arguing with victim, shot victim eight times); *Smith v. State*, 502 N.E.2d 485, 489 (Ind.1987) (evidence warranted giving of voluntary manslaughter instruction where defendant armed herself with a gun and bullets on her way to the victim's business where she shot victim 13 times). Furthermore, our supreme court has held that it is not erroneous in a murder trial to give the jury a voluntary manslaughter instruction, even in the absence of evidence of sudden heat. *See Gilley v. State*, 560 N.E.2d 522, 523–24 (Ind.1990); *O'Conner v. State*, 272 Ind. 460, 465, 399 N.E.2d 364, 369 (1980).

Here, however, there was sufficient evidence of sudden heat warranting such an instruction. There was substantial evidence that the victim sought the confrontation and initiated contact with Washington by firing the first gunshot. Washington reacted to the attack by grabbing a nearby gun and running from the victim, firing repeatedly as he ran. The evidence establishes that there was provocation and possible sudden heat such that a rational basis existed for the finding that Washington was not guilty of murder but guilty of voluntary manslaughter. Because the evidence supports the trial court's determination that a voluntary manslaughter instruction was warranted, the trial court did not err in giving the instruction.

Washington next assigns error to the trial judge's denial of his motion for judgment on the evidence at the close of the State's case-in-chief. According to Washington, the State failed to produce any evidence that Washington was involved in the shooting incident. Following the denial of this motion, however, Washington presented evidence in his defense. The introduction of any evidence following the denial of a motion for judgment on the evidence constitutes a waiver of any error in the overruling of the motion. *Sanders v. State*, 428 N.E.2d 23, 27 (Ind.1981).

Because Washington presented evidence on his own behalf following the trial court's denial of his motion, we will treat the issue as one of general insufficiency of the evidence. *Chubb v. State*, 640 N.E.2d 44, 47 (Ind.1994). Washington bases his insufficiency argument mainly upon the discrepancies in the testimony of the witnesses.

It is well settled in considering the sufficiency of the evidence that we will neither reweigh the evidence nor judge the credibility of the witnesses. *Partlow v. State*, 453 N.E.2d 259, 272 (Ind.1983), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219 (1984). We look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value to support the conclusion of the trier of fact, the judgment will not be over-

turned. *Id.* Furthermore, this Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the jury. *Id.*

Notwithstanding the discrepancies, the facts remain clear that Bradford approached Washington to initiate a confrontation. A shot was fired, after which Washington immediately grabbed a gun, turned to run, and, as he ran fired repeatedly at Bradford. Bradford suffered four gunshot wounds: two to the chest, one to the thumb, and one to the forearm. Bradford died as a result of the two gunshot wounds to the chest. The gun that Bradford allegedly fired was not recovered.

Washington was convicted of voluntary manslaughter which is defined as knowingly killing another human being while acting under sudden heat. IND.CODE § 35–42–1–3 (1993 Ed.). Even though it is obvious that there was an altercation in progress between Bradford and Washington, it is equally clear that there was ample evidence from which the jury could find that self-defense was not an element and that Washington deliberately killed Bradford in the sudden heat of the confrontation. We, therefore, find that there was sufficient evidence presented to the jury from which it could reasonably find or infer that Washington did, in fact, commit voluntary manslaughter.

Affirmed.

FRIEDLANDER, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion for the following reasons:

1. The Majority has ignored the most recent attempt by the Indiana Supreme Court to have the "appellate courts of this state speak with one voice." *Wright v. State,* 658 N.E.2d 563, 565 (Ind.1995). The third prong of the *Wright* test has been ignored.

2. There is an absolute absence of a serious evidentiary dispute regarding Washington's sudden heat in the record. A court-induced instruction on voluntary manslaughter over the timely objection of the defendant is reversible error.

3. The court-induced voluntary manslaughter instruction undermined the defendant's defense of self-defense by suggesting a compromise verdict to the jury.

The reversible error here was created by the trial court failing to follow the third prong of the analysis set forth in *Wright.* Once the trial court determines that a lesser included offense is inherently included in the crime of murder, " ... it must look at the evidence presented in the case by both parties." *Wright,* 658 N.E.2d at 567. In *Wright,* Justice Sullivan pointed to the second phase of the third prong analysis. The second phase requires that a serious evidentiary dispute exists:

> If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense.

Here, there was no serious evidentiary dispute regarding Washington's sudden heat, and there was no request to give the voluntary manslaughter instruction. It was given *sua sponte* by the trial court. Giving this instruction to the jury crippled Washington's self-defense argument and made a strong suggestion to the jury for a compromise verdict.

None of Washington's conduct or spoken words reflect sudden heat. In his testimony at trial, he testified that he felt that he was in danger. This is the only evidence that mirrors Washington's subjective state of mind. On the other hand, Bradford's state of mind is quite different. It was boiling over with rage.

In the Blue Max parking lot, Bradford jumped in his truck and raced over to the parking space where Washington was about to leave. Bradford shouted abusive language at Washington: "I'm going to handle my business"; "I want to talk to you mother fucker"; and "I'm going to kill this mother fucker." Then, Bradford pulled out a hand gun and pulled the trigger. The cracking thunder from the exploding hand gun caused Washington to feel that he was in danger. During this interlude, he had said and done nothing. But now, he decided to obtain a hand gun from his car and run for cover—shooting in the general direction of Bradford. The sudden heat, if any existed, had been generated by Bradford—not Washington. To attribute Bradford's feelings of anger and retribution to Washington is entirely unjustified. Bradford was the aggressor who angrily threatened death. Nothing in the record shows sudden heat on the part of Washington. Nothing in the record justifies the giving of a voluntary manslaughter instruction. To do so surely invited and suggested to the jury a compromise verdict.

"Although compromise verdicts doubtlessly are often forthcoming, they are not sanctioned in law and certainly should not be court-induced." *Whitten v. State,* 263 Ind. 407, 333 N.E.2d 86, 91 (1975).

As a basis for giving a lesser included offense instruction, the trial court has transferred to Washington the sudden heat exhibited by Bradford's conduct. In so doing, the trial court undercut Washington's defense of self-defense and suggested to the jury that a compromise verdict was in the offering. This was reversible error.

Washington made the proper objection when the trial court announced that it would give the voluntary manslaughter instruction which requires evidence of sudden heat on the part of Washington. This was reversible error because the only evidence in the record of Washington's state of mind is by his own testimony that he felt himself in danger. The instruction is not consistent with the evidence. *Henning v. State,* 477 N.E.2d 547, 550 (Ind.1985).

Additionally and more important, the "one voice" dictates of *Wright* have been ignored.

The law should have a high degree of predictability. *Wright* has made this possible with lesser included offenses, and we have but to follow it.

Therefore, I would reverse the judgment.