# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 07 2018, 6:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keith A. Smith,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 7, 2018<br><br>Court of Appeals Case No.<br>12A02-1711-CR-2820<br><br>Appeal from the Clinton Circuit Court<br><br>The Honorable Donald E. Currie, Senior Judge<br><br>Trial Court Cause No.<br>12C01-1603-MR-293 |

**Mathias, Judge.**

[1] Keith A. Smith ("Smith") was convicted of murder after a jury trial in the Clinton Circuit Court. Smith now appeals and presents two issues for our review which we restate as:

> I. Whether the trial court erred when it refused to instruct the jury on voluntary manslaughter; and

> II. Whether the trial court abused its discretion when it declined to admit certain evidence at trial.

[2] We affirm.

## Facts and Procedural History

[3] Smith and his wife Lisa had been friends with Matt Gilbert ("Gilbert") for several years. The three regularly engaged in consensual sexual activity together. At some point, Lisa and Gilbert became sexually involved *without* Smith, but with Smith's knowledge and consent. This went on for about a month at which point Gilbert ended the relationship because he felt Lisa was becoming attached, and Smith was becoming jealous. The three agreed that they would remain close friends.

[4] On the morning of March 26, 2016, Smith went to Gilbert's home and the two spoke about going fishing the next day. Just before 6:00 p.m. later that day, Gilbert received a phone call from which Smith during which he sounded

"frantic" and "very upset." Tr. Vol. 1, p. 162.[1] Gilbert immediately got into his vehicle and traveled to Smith's residence. When Gilbert arrived, Smith walked out of the home, and the two spoke in the front yard. Smith was visibly upset, and "he looked pale." *Id.* at 165.

[5] Shortly after 7:00 p.m., Smith called 911 and in a monotone voice stated, "I just shot my wife and killed her." Ex. Vol., State's Tr. Exs. 1, 30. Officers arrived soon after, and it took Frankfort Police Department Captain Scott Shoemaker ("Captain Shoemaker") approximately seventeen minutes to convince Smith to exit the house and surrender. Captain Shoemaker explained that Smith sounded "emotionless" on the phone while he was trying to convince him to come outside, and this gave him concern that Smith was suicidal. Captain Shoemaker stated, "it was either we were gonna have to do something or he was gonna do something himself." Tr. Vol. 1, p. 207.

[6] After Smith surrendered, officers entered the home and found Lisa's lifeless body on the bedroom floor. Smith had fired a single shot that struck Lisa in the left shoulder and severed a vein on the right side of her neck. She died from a loss of blood as a result of the gunshot wound. On March 31, 2016, the State charged Smith with Lisa's murder.

---

[1] Although the table of contents for the transcript is labeled as volume one, so too is the first volume of the trial transcript. Thus, all citations to "Vol. 1" of the transcript herein are citations to the first volume of the trial transcript.

[7] A three-day jury-trial commenced on September 11, 2017. During the State's direct examination of Gilbert, he testified that he spoke with Smith on the day of the murder both on the phone while driving to Smith's home and once he arrived. Tr. Vol. 1, pp. 153–57. On cross-examination, Smith's counsel sought to elicit testimony about the conversations Gilbert and Smith had, and the State raised a hearsay objection. Outside of the presence of the jury, Smith's counsel argued that the contents of the conversation should be admitted under the completeness doctrine. After hearing argument from both sides, the trial court sustained the State's objection. Smith's counsel then made an offer of proof that in Smith's initial phone call to Gilbert, he stated, "I lost it. I snapped." *Id.* at 175. And then once Gilbert arrived at Smith's home, Gilbert testified that Smith said he "lost it in the moment," and "it was too late." *Id.* at 176.

[8] At the close of the three-day trial, Smith's counsel asked the court to give the pattern jury instructions on sudden heat and voluntary manslaughter. To support his request, Smith's counsel relied on Gilbert's testimony regarding Smith's demeanor and Smith's neighbor's testimony that he "looked white as a ghost" after the shooting. Tr. Vol. 1, p. 140. The State responded that although provocation can arise from jealousy and acknowledged that there was testimony of jealousy during trial, "there is no official evidence on the record . . . [that] at the time the act was committed . . . that such emotion had overwhelmed [Smith's] reason." Tr. Vol. 2, p. 105. The court acknowledged the instructions were tendered, and it then declined to give them to the jury.

The jury found Smith guilty, and he was sentenced to fifty years in the Indiana Department of Correction. Smith now appeals.

## Failure to Instruct the Jury on Voluntary Manslaughter

Smith first claims that the trial court abused its discretion when it failed to instruct the jury on voluntary manslaughter,[2] as a lesser included offense of murder. Trial courts are provided broad discretion when instructing juries, and we review a trial court's decision with regard to jury instructions only for an abuse of that discretion.[3] *Harrison v. State*, 32 N.E.3d 240, 251 (Ind. Ct. App. 2015), *trans. denied*.

When determining whether to give a lesser included offense instruction, trial courts apply the three-part test our supreme court set out in *Wright v. State*, 658

---

[2] We acknowledge that Smith alleges that the trial court abused its discretion when it failed to instruct the jury on both sudden heat and voluntary manslaughter, however, if the trial court had instructed the jury on voluntary manslaughter it also would have needed to instruct the jury on sudden heat. Therefore, our discussion below regarding the voluntary manslaughter instruction also encompasses Smith's claims relating to the sudden heat instruction.

[3] Smith contends that we should review the trial court's decision here *de novo*. *See* Appellant's Br. at 14–16. Our supreme court has explained that if a "trial court rejects a tendered instruction on the basis of its view of the law, as opposed to its finding that there is no serious evidentiary dispute," then we will review that decision *de novo*. *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind. 1998). But when a trial court makes an express finding "as to the existence or absence of a substantial evidentiary dispute," then we review its decision for an abuse of discretion. *Id.* After hearing argument from both sides relating to evidence of sudden heat, the trial court rejected Smith's tendered instructions. Tr. Vol. 2, pp. 104–05. Although the court did not explicitly state that it found no serious evidentiary dispute, the record indicates that this was the basis for its decision. *Id.* For these reasons, we will apply an abuse of discretion standard of review. *See Brown*, 703 N.E.2d at 1019 (where the trial court does not make an explicit finding as to whether a serious evidentiary dispute existed, "we will presume that the trial court followed controlling precedent and applied" the law). However, we note that even if we reviewed the trial court's decision *de novo*, we would still conclude that the trial court did not err when it declined to give Smith's tendered instructions to the jury.

N.E.2d 563 (Ind. 1995). The supreme court succinctly explained this test in *Wilson v. State*:

> The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense. If so, the trial court must determine whether there is a serious evidentiary dispute regarding any element that distinguishes the two offenses.

765 N.E.2d 1265, 1271 (Ind. 2002) (citations omitted). If the evidence in the record does not support giving an instruction on an inherently or factually included lesser offense, then the trial court should not give it to the jury. *Wright*, 658 N.E.2d at 567.

[12] Murder and voluntary manslaughter are distinguished by evidence of sudden heat, "which is an evidentiary predicate that allows mitigation of a murder charge to voluntary manslaughter." *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004); Ind. Code § 35-42-1-3. Our courts characterize sudden heat "as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation[.]" *Washington*, 808 N.E.2d at 626. An instruction on voluntary manslaughter is appropriate only "if there exists evidence of sufficient provocation to induce passion that renders a reasonable personal incapable of cool reflection." *Id.* And words alone do not constitute sufficient provocation. *Gibson v. State*, 43 N.E.3d 231, 240 (Ind. 2015).

[13] Because voluntary manslaughter is an inherently included offense to murder, step one of the *Wright* test is satisfied, and we thus turn to step three, whether there is a serious evidentiary dispute as to sudden heat. *Wright*, 658 N.E.2d at 567. Smith argues that "there was appreciable evidence of sudden heat in the record," and thus the trial court erred when it declined to instruct the jury on voluntary manslaughter. Appellant's Br. at 19–20. Specifically, Smith points to the facts that: (1) He became jealous during Lisa and Gilbert's exclusive sexual relationship; (2) He was frantic and crying when he called Gilbert on the day of the murder; and (3) He looked pale when Gilbert arrived, and he had a look in his eyes that Gilbert had never seen before. *Id.* at 17.

[14] We find no evidence in the record supporting Smith's claim of sudden heat. Any jealousy that Smith harbored is belied by the facts that Smith knew Gilbert had already ended the relationship with Lisa, and Smith and Gilbert remained good friends. Smith visited Gilbert on the morning of the murder to discuss going fishing, and he called Gilbert immediately after shooting Lisa later that day. And even if we assume Smith was jealous and upset with Lisa, this alone is not enough to constitute sudden heat. *See Isom v. State*, 31 N.E.3d 469, 486–87 (Ind. 2015).

[15] Moreover, the fact that Smith was visibly upset, frantic, and looked pale after shooting his wife does not constitute evidence of sudden heat. This is merely evidence indicative of a man who has just committed a heinous act. There is nothing in the record regarding what took place inside Smith's home that led him to murder Lisa. And without any evidence in the record from which a

reasonable person could conclude that Smith acted in sudden heat when he shot and killed his wife, there is no evidentiary dispute.[4] As such, the trial court did not abuse its discretion when it declined to give a voluntary manslaughter instruction to the jury.

## Exclusion of Conversations Between Smith and Gilbert

[16] Smith next contends that under the completeness doctrine, the trial court erred when it excluded evidence of his conversations with Gilbert on the day of the murder. *See* Appellant's Br. at 20–27. The completeness doctrine provides that "when a party introduces part of a conversation or document, the opposing party is [generally] entitled to have the entire conversation or entire instrument placed into evidence." *McElroy v. State*, 553 N.E.2d 835, 839 (Ind. 1990). The doctrine has been incorporated into Indiana Evidence Rule 106[5] with respect to written and recorded statements, but the common-law doctrine of completeness is also still viable with respect to conversations. *Lewis v. State*, 754 N.E.2d 603, 607 (Ind. Ct. App. 2001), *trans. denied*.

---

[4] Smith's reliance on *Griffin v. State*, 644 N.E.2d 561 (Ind. 1994), is unavailing. In that case, before the defendant shot and killed his wife, she pointed a gun at him, the two engaged in a physical altercation, and she attempted to coerce him into having sexual intercourse. *Id.* at 562–63. On appeal, we concluded that the trial court erred when it refused to instruct the jury on voluntary manslaughter because there was "sufficient evidence in [the] record which, if believed by the jury, could have established sudden heat." *Id.* at 563. Here, there is *no* evidence of what occurred inside Smith's home prior to the shooting.

[5] Indiana Evidence Rule 106 states, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."

[17] The doctrine prevents a party from misleading the jury by presenting statements out of context. *Sanders v. State*, 840 N.E.2d 319, 323 (Ind. 2006). But portions of evidence not expository of nor relevant to already-introduced sections of evidence need not be admitted. *Barnett v. State*, 916 N.E.2d 280, 286 (Ind. Ct. App. 2009), *trans. denied.* We review a trial court's decision to admit or exclude evidence under this doctrine for an abuse of discretion. *Hawkins v. State*, 884 N.E.2d 939, 943 (Ind. Ct. App. 2008), *trans. denied.*

[18] Here, the State elicited testimony from Gilbert that on the day of Lisa's murder, Gilbert spoke with Smith both on the phone and in person. After Smith shot Lisa, he called Gilbert, and the two had a conversation while Gilbert drove to Smith's home, and the two then had another conversation after Gilbert arrived. However, the State was careful to ensure that Gilbert did not testify to any of the contents of those conversations. The State concluded its direct examination of Gilbert by asking him, "Did you encourage [Smith] to call 911 as you spoke with him that day?" Tr. Vol. 1, p. 157. Gilbert responded that he did not. *Id.* Smith asserts that "[b]y eliciting testimony from [Gilbert] about the content of the conversations he had with [Smith] that day, the State opened the door to the admission of the entirety of their conversations." Appellant's Br. at 20. We disagree.

[19] No portion of any of the conversations that Gilbert had with Smith on the day of the murder was put before the jury. And the purpose of the completeness doctrine is to allow "a party [to] place into evidence the *remainder of a statement* or document which the opposing party has introduced when the portions relied

upon by the opposing party may be misleading to the jury when taken out of context." *Norton v. State*, 772 N.E.2d 1028, 1033 (Ind. Ct. App. 2002) (emphasis added), *trans. denied*. But when a party does not introduce any portion of a conversation, then there is nothing to complete. The trial court shared this concern when it asked Smith's counsel, "[W]hat is this completing?" Tr. Vol. 1, p. 168.

[20] Here, the only testimony the State elicited was that Gilbert did not encourage Smith to call 911. Smith asserts that this statement is misleading without the remainder of their conversations being admitted into evidence. *See* Tr. Vol. 1, p. 168; Appellant's Br. at 25. But Smith fails to explain how this would mislead the jury.[6] Moreover, Gilbert's statement about his inaction is not part of any conversation he had with Smith, nor does it constitute testimony about anything Gilbert or Smith said to each other on the day of the murder. *Cf. McElroy*, 553 N.E.2d at 839 (holding that the trial court erred when it allowed a police officer to testify about certain statements the defendant made during interrogation but did not allow the officer to testify to other exculpatory

---

[6] Smith also takes issue with a portion of the State's closing argument in which it speculated as to what Gilbert and Smith discussed the day of the murder, *see* Tr. Vol. 2, p. 117, even though it knew the contents of the conversation because it came out during the offer of proof. Smith contends that "[t]he prosecutor misrepresented his own knowledge to the jury, took unfair advantage of the trial court's decision to exclude the evidence, and encouraged the jury to conjure up the most sinister possible dialogue between [Gilbert] and [Smith.]" Appellant's Br. at 26. However, the State's comments came *after* Smith's counsel: (1) argued that the jury could not convict Smith without knowing why he did it; (2) noted that the State elicited testimony from Gilbert but did not ask him one question about what was said during his conversations with Smith; and (3) wondered aloud, "What is it they don't want you to know?" Tr. Vol 2, p. 113–14. Thus, the State's response was a proper rebuttal to arguments raised by Smith's counsel.

statements the defendant made during the same interview). For these reasons, it was unnecessary to admit the otherwise inadmissible hearsay statements of Smith under the completeness doctrine, and thus the trial court did not abuse its discretion when it declined to admit the testimony at trial.[7]

## Conclusion

[21] Based on the facts and circumstances before us, the trial court did not abuse its discretion when it refused to instruct the jury on voluntary manslaughter, and it did not err when it denied Smith's request to admit Gilbert's testimony relating to conversations he had with Smith on the day of Lisa's murder. Accordingly, we affirm.

Riley, J., and May, J., concur.

---

[7] Even if the trial court erred in excluding the evidence of conversations between Smith and Gilbert on the day of the murder, the error is harmless. Smith argues that if testimony regarding the conversations had been admitted, then it would have strengthened his argument for jury instructions on sudden heat and voluntary manslaughter. Appellant's Br. at 27. However, during the offer of proof, Gilbert merely stated that Smith told him that he "lost it" and that he "snapped." Tr. Vol. 1, pp. 175–176, 179. Gilbert also testified that Smith told him that there had been talk of divorce. Even if this testimony was admitted, Smith still would have lacked a valid claim that he acted under sudden heat. *See Massey v. State*, 955 N.E.2d 247, 256–57 (Ind. Ct. App. 2011); *Supernant v. State*, 925 N.E.2d 1280, 1283–84 (Ind. Ct. App. 2010), *trans. denied.*