**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Sep 24 2012, 9:07 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTINA J. JACOBUCCI**
LaPorte, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JUSTIN L. SMART, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 46A05-1201-CR-20 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE LAPORTE CIRCUIT COURT
The Honorable Thomas J. Alevizos, Judge
Cause No. 46C01-1005-FB-199

**September 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Justin L. Smart appeals his convictions for Class B felony dealing in cocaine and Class C felony dealing in a look-alike substance. He contends that the evidence is insufficient to support both convictions. Finding the evidence sufficient, we affirm.

**Facts and Procedural History**

In 2009, R.H. was a confidential informant for the LaPorte County Sheriff's Department's drug task force known as Metro. R.H. met Smart at a mutual friend's home sometime in the summer of 2009. R.H. did not know Smart's last name when she first met him. At some point R.H. took possession of Smart's wallet, which contained his Illinois driver's license, and took it to Detective Brett Swanson with Metro. Detective Swanson created a digital copy of Smart's identification and later had R.H. confirm Smart's identity using a photograph printed from an Illinois database. R.H. and Smart later spent multiple hours together at the mutual friend's house on three to five different occasions.

On September 1, 2009, R.H. contacted detectives at Metro about purchasing cocaine from Smart. R.H. then contacted Smart, who told R.H. to meet him in the parking lot of the LaPorte Walmart. Detective Swanson met with R.H. before the controlled buy. He performed an outer-clothing pat down of R.H. and equipped her with an audio recording device and a purse that contained a hidden camera. He also gave her $50 in buy money that he had photocopied.

At 3:00 p.m., Detective Swanson drove R.H. to Walmart in his unmarked police car. R.H. got out of the car and briefly entered the store. When R.H. left the store, she

approached a car that had pulled up in front of the store. R.H. entered the back passenger seat of the car. Smart was sitting in the front passenger seat and a light-skinned black male was driving the car. R.H. gave the buy money to the driver, and Smart handed R.H. two baggies containing a white rock-like substance that appeared to be crack cocaine. R.H. told Smart that she needed to purchase more crack cocaine shortly following this transaction. The video and audio recording device captured some, but not all, of this controlled buy. *See* State's Ex. 5.

R.H. got out of the car and returned to Detective Swanson's car. R.H. gave Detective Swanson the baggies, and Detective Swanson had R.H. briefly describe the purchase. R.H. told Detective Swanson that she recognized Smart inside of the car. She also told Detective Swanson that she gave the money to the driver and that Smart handed her the two plastic baggies.

R.H. then contacted Smart to arrange the second purchase that she had mentioned to Smart while in the car. Smart instructed R.H. to meet him at a house on State Street in LaPorte that she was unfamiliar with. R.H. did not get out of Detective Swanson's car between completing the first purchase and arriving at the location on State Street. Detective Swanson performed another outer-clothing pat down of R.H. and gave her another $50 in buy money and the purse with the recording equipment.

At 3:24 p.m., R.H. got out of Detective Swanson's car and knocked on the door of the house. The driver from the first controlled buy at Walmart answered the door. At this point, there is some question as to who handed R.H. a baggie containing the white rock-like substance. The audio equipment did not pick up anything useful from the

3

controlled buy, and unfortunately the video equipment did not work. A report that Detective Swanson filled out that day indicated that a light-skinned black male – the driver from the first controlled buy – handed R.H. the cocaine while Smart stood behind the door. But as explained in detail below, by the time of trial, the State's theory changed, and R.H. testified that it was Smart who handed her the cocaine.

In any event, R.H. returned to Detective Swanson's car at 3:25 p.m. and gave him the baggie. According to audio recording of this conversation, which unfortunately does not settle the matter of who handed the cocaine to R.H., R.H. told Detective Swanson that a light-skinned black male opened the door and called Smart a "stupid fu\*\* for doing that." *Id.* R.H. also said that Smart was inside the house. *Id.*

Detective Swanson followed the procedure for preserving the baggies as evidence and transported them to the Indiana State Police Laboratory in Lowell. Kimberly Ivanyo, a forensic drug chemist for the Indiana State Police, tested the white rock-like substances provided by Detective Swanson. No controlled substance was found in the two baggies from the first controlled buy at Walmart. The baggie from the second controlled buy from the house on State Street contained cocaine base and weighed .31 grams.

R.H. received $50 for each controlled buy she conducted on September 1, 2009. She did not receive additional compensation for her trial testimony. R.H. continued to work as a confidential informant for Metro after September 1, 2009. In order to protect R.H.'s identity, Detective Swanson did not seek a warrant for Smart's arrest until the spring of 2010. When preparing the probable-cause affidavit in May 2010, Detective Swanson wrote that R.H. told him during the debriefing process after the second

4

controlled buy that a "'little . . . light skinned black male' answered the door and actually sold them the 'drugs'" and "Smart was in the house behind the door during the transaction." Def.'s Ex. C.

On May 6, 2010, the State charged Smart with Class B felony aiding, inducing, or causing dealing in cocaine and Class C felony dealing in a look-alike substance. Smart's jury trial began on November 9, 2011. Before any evidence was presented, the State filed a motion to amend the charging information for Class B felony aiding, inducing, or causing dealing in cocaine "due to an immaterial defect not affecting substantial rights of the defendant." Appellant's App. p. 85. The motion provided:

> Upon examining the sworn deposition of the witness, [R.H.], and the surveillance recordings of the conduct at issue, the State finds that the additional language for aiding, inducing or causing the offense is superfluous and should be stricken from the charging information. This does not change the offense which the defendant is facing, the particulars of the offense, nor the possible punishments. All defenses available to the defendant under the aiding, inducing or causing theory of the case are still available to him.

*Id.* With no objection from the defense, the trial court granted the motion. Tr. p. 298-99. Accordingly, the State amended the charge to Class B felony dealing in cocaine.

Regarding the second controlled buy, R.H. testified that when she knocked on the door, the driver from the first controlled buy answered the door and yelled at Smart, who then came to the door. R.H. gave Smart the money, Smart handed her a baggie containing a white rock-like substance, and R.H. quickly left. During cross-examination, R.H. remained firm that Smart – and not the light-skinned black male who answered the door – was the one who sold her the cocaine. When defense counsel asked R.H. if it was true that she told Metro officers that the light-skinned black male handed her the cocaine,

5

R.H. responded that she never told Metro officers that; rather, she told them that Smart handed her the cocaine. *Id.* at 440. As for Detective Swanson, defense counsel vigorously cross-examined him about his various reports and deposition testimony that indicated that R.H. told him that the light-skinned black male conducted the transaction while Smart stood behind the door. *Id.* at 370-72.

At the close of the State's case in chief, Smart moved for judgment on the evidence for Class B felony dealing in cocaine based on the conflicting evidence as to who handed the cocaine to R.H. during the second controlled buy – Smart or the light-skinned black male who drove the car during the first controlled buy. The trial court denied Smart's motion, and then Smart called Detective Swanson as a witness. *Id.* at 479. Smart renewed his motion at the close of the evidence, and the trial court again denied it. *Id.* at 569.

The jury found Smart guilty of Class B felony dealing in cocaine and Class C felony dealing in a look-alike substance. The trial court sentenced Smart to fourteen years, with four years suspended to probation, for Class B felony dealing in cocaine and six years for Class C felony dealing in a look-alike substance. The court ordered the sentences to be served concurrently. The court said that Smart "reserve[d] the right to file for modification after six (6) years of serving [his] sentence." Appellant's App. p. 231.

Smart now appeals.

**Discussion and Decision**

6

Smart contends that the evidence is insufficient to support his convictions for Class C felony dealing in a look-alike substance and Class B felony dealing in cocaine.[1] When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* When confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotation omitted). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

### I. Dealing in a Look-Alike Substance

Smart contends that the evidence is insufficient to support his conviction for Class C felony dealing in a look-alike substance, which was the first controlled buy conducted at Walmart.

In order to convict Smart of Class C felony dealing in a look-alike substance as charged here, the State had to prove that he knowingly or intentionally distributed a substance under circumstances that would lead a reasonable person to believe that the

---

[1] Smart also argues that the trial court erred in denying his motion for judgment on the evidence for dealing in cocaine. Smart, however, introduced evidence following the trial court's denial of this motion. The introduction of any evidence following the denial of a motion for judgment on the evidence constitutes waiver of any error in the overruling of the motion. *Washington v. State*, 685 N.E.2d 724, 728 (Ind. Ct. App. 1997), *reh'g denied*. We will therefore treat the issue as one of general insufficiency of the evidence, which Smart raises. *See id.*

substance was a controlled substance, to wit, cocaine. Ind. Code §§ 35-48-4-4.6, 4.5(a)(2); Appellant's App. p. 8. "Distribute" means to deliver. Ind. Code § 35-48-1-14.

The State presented evidence that Smart distributed a substance that appeared to be cocaine in a manner consistent with a drug deal. R.H. met Smart outside of Walmart after speaking with him on the phone about purchasing cocaine. R.H. entered the car and gave the driver $50, and Smart handed R.H. two baggies containing a white rock-like substance. R.H. told Smart that she needed to purchase more cocaine in a little bit and then got out of the car. When being debriefed in Detective Swanson's car, R.H. confirmed that it was Smart who handed her the two baggies.

In addition, the substance had the physical characteristics of cocaine. Three witnesses familiar with cocaine – Detective Swanson, R.H., and forensic drug chemist Ivanyo – each testified that the substance in the two baggies appeared to be cocaine. Tr. p. 348, 403, 430. The substance, however, did not contain cocaine. Because Smart distributed a substance that physically resembled cocaine in a manner consistent with a drug deal, we conclude that the evidence is sufficient to support Smart's conviction for Class C felony dealing in a look-alike substance. Smart's other arguments – such as that R.H. was a paid informant, she was uncertain about parts of her testimony, and there was no DNA evidence or fingerprints on the baggies – are merely requests for us to reweigh the evidence, which we will not do.

## II. Dealing in Cocaine

Smart also contends that the evidence is insufficient to support his conviction for Class B felony dealing in cocaine, which was the second controlled buy conducted at the house on State Street.

In order to convict Smart of Class B felony dealing in cocaine as charged here, the State had to prove that he knowingly or intentionally delivered cocaine. Ind. Code § 35-48-4-1(a)(1)(C); Appellant's App. p. 85; Tr. p. 298-99.

In analyzing the sufficiency of the evidence for this conviction, Smart essentially argues that this Court should reverse the decision of the trial court based on the "incredible dubiosity rule." Appellant's Br. p. 10 (citing *Gaddis v. State*, 253 Ind. 73, 251 N.E.2d 658, 662 (1969)). Under this rule, a court will impinge on the jury's responsibility to judge the credibility of the witnesses only when it has confronted "inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994) (quotation omitted). Application of this rule is limited to cases where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt. *Id.* In such an action, an appellate court may reverse the trial court's decision. *Id.* (citing *Gaddis*, 253 Ind. at 82, 251 N.E.2d at 663).

Here, the State initially charged Smart with aiding, inducing, or causing dealing in cocaine based on the fact that Smart was standing behind the door during the transaction. In fact, Detective Swanson's probable-cause affidavit provided that a "'little . . . light skinned black male' answered the door and actually sold them the 'drugs'" and "Smart

9

was in the house behind the door during the transaction." Def.'s Ex. C. But on the day of trial, the State amended the charging information to dealing in cocaine. In line with this amendment, R.H. testified at trial that the light-skinned black male answered the door and Smart came to the door and handed her the cocaine. Nevertheless, various reports and deposition testimony from Detective Swanson indicated that R.H. told Detective Swanson that the light-skinned black male handed the cocaine to R.H. while Smart stood behind the door. Notably, the video equipment did not work, and the audio equipment did not pick up anything useful from the actual controlled buy. Once R.H. returned to Detective Swanson's car, however, there was audio of their conversation, *see* State's Ex. 5, but it is not conclusive as to who handed the cocaine to R.H. R.H. remained firm on cross-examination that Smart was the one who handed her the cocaine, and she said that she in fact told Detective Swanson during their debriefing that Smart handed the cocaine to her. Defense counsel then vigorously cross-examined Detective Swanson regarding his various reports and deposition testimony.

Defense counsel pointed out that Detective Swanson's various reports and deposition testimony indicated that R.H. told him that the light-skinned black male handed the cocaine to R.H. while Smart stood behind the door. Nevertheless, R.H. denied at trial that she ever told Detective Swanson that. Instead, R.H. testified that she told Detective Swanson from the very beginning that the light-skinned black male answered the door and Smart came to the door and handed her the cocaine. The issue boiled down to a credibility determination between Detective Swanson and R.H., with the State essentially arguing that Detective Swanson did not remember things correctly.

10

Defense counsel vigorously cross-examined both R.H. and Detective Swanson and then argued these points to the jury during closing argument. *See* Tr. p. 539-44. Still, the jury found Smart guilty of Class B felony dealing in cocaine. Because R.H.'s testimony was not inherently improbable, we will not impinge on the jury's responsibility to judge the credibility of the witnesses. Smart's other arguments are merely requests for us to reweigh the evidence, which we will not do.

Affirmed.

MATHIAS, J., and BARNES, J., concur.