John S. ROWE, Appellant,

v.

STATE of Indiana, Appellee.

No. 84S00–8709–CR–860.

Supreme Court of Indiana.

June 15, 1989.

Larry J. Wagner, Vigo County Public Defender, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen. and Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of one count of Murder and two counts of Attempted Murder, a Class A felony, for which he received consecutive terms of forty (40) years, thirty (30) years, and thirty (30) years, respectively.

The facts are: Shortly after 9:00 p.m. on July 9, 1986 appellant, age eighteen, visited his parents at their home in Terre Haute,

Indiana. While his father was asleep on the living room couch and his mother was working in the kitchen, appellant told his 13–year–old sister Gretchen to wait for him in her bedroom. He then produced a .32 caliber revolver and shot his sleeping father once in the face and then shot his mother once in the neck and once in the chest, killing her as she stood at the stove.

Appellant then went into Gretchen's room where he fired two shots at her. One barely missed her face; the other struck her elbow. She fell to the floor, and appellant ran out of the house. Gretchen then got up and went to check on her parents. As she moved through the house, appellant fired another shot at her from outside through the windows, reloaded his revolver and fired two more shots into the house.

Appellant then ran two houses down the street to the apartment he shared with Stefan Hodges, his homosexual lover. He burst in and told Hodges they had to get away and never return to Terre Haute. Appellant got his roommate and their cat into a rental car and drove north. When Hodges, still unaware of the shootings, began protesting the unplanned move, appellant dropped him off, along with the cat, at the home of a friend. He continued driving north, stopping in Chicago to pawn a radio to raise some cash.

Around noon the following day, appellant telephoned Steven Forsyth, a friend in Terre Haute, to find out what was transpiring there. Forsyth told appellant that he was sought by police and that he had killed his mother and wounded his sister and father. When told his father was okay, appellant expressed disappointment. Appellant continued driving north. Later that day he was apprehended by a Wisconsin State Trooper, who found under appellant's front seat a .32 caliber revolver which was later revealed by ballistics tests to have fired bullets recovered in his parents' home and removed from his mother's body.

Witnesses testified at trial that appellant worked for his father's insurance business and that disputes had arisen over money matters, in particular appellant's embezzlement of large sums from the business.

Testimony also revealed appellant harbored animosity over his father's disapproval of appellant sharing his apartment with his unemployed black homosexual lover and their habitual drug use. Steven Forsyth testified that appellant had often expressed hatred toward his father prior to the shootings and in January of 1986 had described to Forsyth how he would like to kill his father by breaking into the home and shooting his sister, mother, and father in their beds to make it look like a break-in.

Appellant contends the trial court erred in failing on several occasions to conduct the trial in an impartial manner, such that his defense was diminished in the eyes of the jury. He cites *Abernathy v. State* (1988), Ind., 524 N.E.2d 12, and *Wagner v. State* (1985), Ind., 474 N.E.2d 476 for the propositions that it is reversible error for the trial judge to question witnesses so as to impeach or discredit them and that a judge must remain impartial and refrain from making unnecessary remarks.

 The trial court also has a duty, however, to conduct the trial in a manner calculated to promote the ascertainment of truth, fairness, and economy of time. *Armstrong v. State* (1986), Ind., 499 N.E. 2d 189. It lies within the trial court's discretion to intervene in the fact-finding process in order to promote clarity. *Church v. State* (1984), Ind., 471 N.E.2d 306. Even where the court's remarks display a degree of impatience, if in the context of a particular trial they do not impart an appearance of partiality, they may be permissible to promote an orderly progression of events at trial. *Fox v. State* (1987), Ind., 506 N.E.2d 1090.

In the case at bar, the following instances are cited by appellant as examples of the trial court's "misconduct": 1) qualifying *sua sponte* a police officer witness as competent to relate the street price of cocaine in response to appellant's hearsay objection; 2) sustaining objections to appellant's questioning before hearing the prosecutor's grounds and without a sidebar conference each time; 3) overruling a defense objection made during the State's cross-examination of a defense witness with the

remark, "Well, this is cross-examination and he's got a right to be real nasty and tear him up if he wants to;" 4) allowing the State to use a blackboard to illustrate the floor plan of the victims' home during direct examination, while expressing misgivings about defense use of the blackboard to list "things he's sure about" during cross-examination of Stefan Hodges; 5) telling defense counsel to "leave the speech out" when counsel requested Hodges to speak more slowly; 6) eliciting from Dr. Mehta, a court-appointed psychiatrist, the fact his wife was also a psychiatrist; and 7) interrupting the State's cross-examination of Dr. Greist, a psychiatrist testifying for the defense, to keep the proceedings more expeditiously on track.

None of the instances cited here by appellant rises to the level of advocacy we held to be reversible error in *Abernathy, supra.* Indeed, when placed in their trial context alongside like treatment of the prosecution, they represent a rather even-handed if somewhat crusty approach by the trial court to keeping the trial moving, similar to that found not to warrant reversal in *Fox, supra.*

Appellant further maintains that considered individually, his cited instances do not fully reflect the degree of judicial misconduct suffered here, and the entire transcript must be considered to fully discern the cumulative impact of the trial court's misconduct. However, as noted above, the cited instances when placed in context reveal less rather than more prejudicial impact. Moreover, trial irregularities which standing alone do not amount to error do not cumulatively gain the statute of reversible error. *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55.

The trial court did not exhibit partiality such as to warrant reversal.

■ Appellant contends the trial court committed fundamental error in failing to instruct the jury as to the lesser included offenses of voluntary manslaughter, involuntary manslaughter, reckless homicide, and battery, and that the trial court erred in refusing his tendered verdict forms covering these lesser offenses.

In order to justify an instruction, and thus a verdict form, on a lesser included offense, not only must the lesser offense be included in the greater one charged, but there also must be evidence from which the jury could properly find that the lesser offense was committed while the greater was not. *Henning v. State* (1985), Ind., 477 N.E.2d 547. Where the evidence shows that the crimes committed, if any, were the ones charged, the trial court is not required to instruct the jury as to lesser offenses. *Outlaw v. State* (1985), Ind., 484 N.E.2d 10.

Appellant maintains the evidence presented at trial relating to his insanity and intoxication defenses would allow the jury to find him guilty of the lesser offenses instead of the charged offenses of murder and attempted murder. However, the evidence presented to the effect that his drug abuse, including that on the day in question, resulted in a mental disease rendering him unable to form the intent required for criminal responsibility, would not logically allow an inference of guilty of a lesser included offense. Such lesser offenses require proof of some level of intent. Proof of a lack of ability to form intent would preclude conviction as to any crime.

The trial court did not err in keeping from the jury consideration of appellant's proposed lesser included offenses.

■ Appellant contends the trial court erred in sentencing him to consecutive terms of imprisonment totalling one hundred (100) years. He argues his sentence is manifestly unreasonable in light of the surviving victims' recommendations that he receive drug rehabilitation instead of prison. He also asserts the trial court made no specific statement of aggravating circumstances to justify the imposition of consecutive sentences.

On review, we will not disturb a sentence unless no reasonable person could find it appropriate in light of the nature of the offense and the character of the offender. Ind.R.App.Rev.Sen. 2. Here, the trial court did in fact state the factors he found

in aggravation: that the killing and attempted killings of three unsuspecting family members constituted a particularly heinous crime; that attempts by appellant's father to get him into a drug rehabilitation program not only were unsuccessful but provoked a reaction in appellant leading to the instant crimes; the care and planning involved in committing the crime; appellant's apparent lack of remorse during the trial; that his hatred for his father was so intense he was willing to kill his mother and sister to cover up his father's murder; and that imposition of a reduced sentence would depreciate the seriousness of the crime as well as convey the message that drug abuse would allow drug users to avoid criminal responsibility for serious crimes.

In view of the foregoing circumstances, the trial court was well within its discretion in finding the aggravating factors to outweigh the mitigating factors of appellant's age and his family's forgiveness. We cannot say the sentence here is inappropriate so as to be manifestly unreasonable. The imposition of consecutive sentences was amply supported in the record by the trial court's recitation of aggravating factors.

The trial court did not err in rendering an executed sentence of one hundred (100) years.

■ Appellant contends the trial court erred in sustaining the State's objection to a question posed by appellant to his psychiatric expert witness, Dr. Greist, who was asked if he had an opinion as to whether appellant, due to his alleged intoxication at the time of the shootings, "was able to conform his behavior to the requirements of the law." The prosecutor objected that such was not the proper standard, and the trial court sustained the objection. Appellant then made an offer to prove in which he elicited from Dr. Greist that in his opinion appellant was too intoxicated to conform his behavior to the requirements of the law.

It is well settled that the correct standard for relief of criminal responsibility due to intoxication is whether the defendant was so intoxicated as to be incapable of forming the requisite intent. *Boze v. State* (1987), Ind., 514 N.E.2d 275; *Terry v. State* (1984), Ind., 465 N.E.2d 1085. To have allowed Dr. Greist to answer appellant's question here would have improperly suggested to the jury that something less than the complete negation of criminal intent would suffice. Indeed, appellant's next question of Dr. Greist, whether appellant "was intoxicated to the extent that he was [un]able to form any type of intent to kill someone," incorporated the proper standard and was answered in the affirmative.

The trial court did not err in sustaining the objection to appellant's question asked of Dr. Greist.

■ Appellant contends the trial court erred in denying him full cross-examination of State's witness Steven Judd. Four to five hours after the shootings, Judd received a telephone call from appellant, who inquired as to Stefan Hodges' whereabouts. When Judd told him that Stefan was being questioned at the Sheriff's office, appellant said, "Tell him that Pedro said hi," and hung up.

During cross-examination of Judd, appellant's counsel asked him whether he thought "that John was in his right mind when—when these things happened." He also was asked, "Do you have an opinion based on your knowledge of John Rowe, based on your conversations with him, your conversation with him shortly after these shootings took place, as to whether or not he was insane," and "Do you have an opinion as to whether or not there was anything wrong with his mind to the extent that he could not perceive or understand things the way they were nor knew what he was doing was wrong?" The trial court sustained objections to these questions. Appellant argues he thereby was denied his Sixth Amendment right to cross-examination and cites *Reighard v. State* (1984), Ind., 457 N.E.2d 557 for the proposition that a lay witness can give opinion testimony regarding insanity and intoxication. However, here the question asked for more than an opinion as to insanity. It asked for a conclusion as to the effect of insanity.

This ultimate fact is a question for the jury and is excludable at the discretion of the trial judge. *Williams v. State* (1976), 265 Ind. 190, 352 N.E.2d 733; *State v. Bouras* (1981), Ind.App., 423 N.E.2d 741.

The State contends that Judd's telephone conversation with appellant was so short in duration and remote from the time of the shootings that it was too attenuated to provide a basis for a lay opinion regarding appellant's sanity. Brevity of observation upon which such an opinion is based goes only to the weight, not the admissibility, of the testimony. *Blake v. State* (1979) 271 Ind. 75, 390 N.E.2d 158.

In the case at bar, the trial court went on to *voir dire* the witness as to his assessment of appellant's sanity. Judd responded, "That's not for me to say he was insane or not because I don't know for sure." Because the response was that the witness had no opinion as to appellant's insanity, the question as to the result of his insanity was moot.

■■■ Appellant contends the jury's guilty verdicts are contrary to law in that the evidence clearly indicated appellant was not responsible for his conduct due to his mental disease resulting from chronic drug abuse or his intoxication resulting from the ingestion of a variety of drugs just prior to the crimes. He argues that Dr. Greist's testimony, made during an offer to prove, that appellant was so intoxicated that he was unable to conform his conduct to the requirements of the law, went unrefuted. We have disposed of this issue above and pointed out that Dr. Greist did answer a proper question as to appellant's ability to form intent. He also emphasizes testimony from family members regarding drastic changes in appellant's personality resulting from his drug use.

At trial, a defendant bears the burden of establishing his insanity defense by a preponderance of the evidence. Ind.Code § 35–41–4–1(b). Evidence must show that "as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind.Code § 35–41–3–6(a); *Rogers v. State* (1987), Ind., 514 N.E.2d 1259. On appeal, we will reverse the jury's rejection of an insanity defense only when the evidence, without conflict, leads solely to the opposite result. *Id.*

There was an abundance of evidence at trial in conflict with appellant's allegations of insanity and intoxication and from which the jury was entitled to find against his proffered defenses. His behavior as related through testimony at trial indicated a lucid state of mind both before and after the shootings. The apparent planning of the crime, the parking of a rental car away from his parents' house, and his flight to avoid arrest as detailed above all show an awareness of the wrongfulness of his conduct.

Dr. Greist acknowledged his opinion that appellant was unable to form intent was based on the veracity of appellant's own account of his copious drug abuse prior to the shootings and that his diagnosis would be incorrect if appellant's account were not accurate. Significantly, none of the witnesses testifying as to appellant's behavior during the hours and days prior to the shootings could confirm his own account of prodigious drug abuse.

In direct rebuttal of appellant's defenses, Dr. Thompson and Dr. Mehta, the two psychiatrists appointed by the trial court to examine appellant, each testified that in his opinion appellant was capable both of appreciating the wrongfulness of his conduct and of forming the intent to commit murder. There was ample evidence at trial from which the jury could conclude appellant was neither too mentally diseased nor too intoxicated to bear legal responsibility for his conduct. We thus will not disturb the jury's rejection of his insanity and intoxication defenses.

The jury verdicts are not contrary to law.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.