Allen G. HARRINGTON, Appellant,

v.

STATE of Indiana, Appellee.

No. 64S00–8901–CR–00018.

Supreme Court of Indiana.

Jan. 14, 1992.

Rehearing Denied March 4, 1992.

James V. Tsoutsouris, Porter County Public Defender, Terry E. Johnston, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PER CURIAM.·

A jury trial in 1985 resulted in appellant's conviction of Murder, Ind.Code 35–42–1–1, for which he received an enhanced sentence of sixty (60) years. On direct appeal, this Court reversed and remanded for a new trial. *Harrington v. State* (1987), Ind., 516 N.E.2d 65 (Givan and Pivarnik, JJ., dissenting). Upon retrial to a jury, appellant again was convicted of Murder and sentenced to the maximum term of sixty years.

The facts are: In December of 1981, appellant began dating a co-worker, Sue Bouche, and soon moved in with her. He and Bouche agreed to get married. Apparently vexed by appellant spending weekends with his children, she broke their engagement and dated other men. A few days later, she reinitiated their relationship and this cycle of separation and reconciliation initiated by Bouche went on for two additional years.

The last reconciliation occurred on March 2, 1985 wherein Bouche promised she would marry appellant and remain faithful to him. One evening a few days later, appellant encountered Bouche in a bar; she stated she was with her girl friends and requested that appellant leave, which he did, only to have several more drinks, brood over this latest rejection, and grow suspicious that Bouche in fact was with another man.

He drove to her apartment but despite sensing she was home could raise no one. He then went to his own apartment, retrieved a rifle and a shotgun, and returned to Bouche's apartment. He let himself in with a key Bouche had given him, walked to the bedroom, opened the door, switched on the light, and discovered Bouche nude in bed with a man he had never seen before, one Christopher Kupec. Appellant fired one shot across the bed, striking the far wall; Kupec exited the bed as appellant reloaded the shotgun, and as he was crouched alongside the dresser appellant shot and killed him.

Meanwhile, Bouche slipped out into the living room, where appellant followed her. He stated his intention to kill himself, and a struggle ensued over the shotgun. When it discharged, the recoil injured Bouche's hand; she then locked herself in the bathroom and eventually was able to talk appellant into putting down the shotgun. Appellant checked on Kupec, ascertained he was dead, then telephoned his brother. Police subsequently arrived, and appellant was arrested.

Appellant contends the trial court erred in denying his pretrial motion for change of judge based upon the judge's bias and prejudice against appellant as manifested in his reaction to the reversal of appellant's first conviction. At the hearing on the motion, defense counsel requested the court take judicial notice of two letters the court had written after being notified of the reversal. One letter, dated December 30, 1987, was addressed to the Deputy Attorney General representing the State on appeal and stated the trial judge "was very disappointed in the Supreme Court's opinion," that his refusal of appellant's tendered instruction regarding the State's burden of negating sudden heat was harmless error, and that the majority opinion was "nit-picking." This letter went on to ask the Deputy Attorney General to file a petition for rehearing and indicates a copy was to be sent to the trial prosecutor.

The other letter, dated January 18, 1988, was written to one of the Justices of this Court who dissented to the reversal of appellant's first conviction. In part, the letter stated:

I appreciate your minority position in the above case. The State has filed a Petition for Rehearing and hopefully the

Supreme Court will give it some serious consideration.

I did ask the Deputy Attorney General if they would file the Petition for Rehearing, which I have never done before. I hope that isn't being out of line for a trial court to do so....

I admit that the [trial] Court should have given Defendant's tendered instruction, but feel that the error should not be of a reversible nature....

The trial court denied the motion for change of judge.

Appellant maintains the trial court's letters constitute ex parte communications in violation of Canon 3 of the Code of Judicial Conduct, section (A)(4), which states, "[a] judge should ... neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding," and section (A)(6), which states, "[a] judge should abstain from public comment about a pending or impending proceeding in any court...."

The impropriety of the letters written by the trial court is obvious. When writing to the Deputy Attorney General he adopted the position of the State of Indiana, forsaking his stance of neutrality, as is further evidenced by his sending a copy of the letter to the trial prosecutor but not to appellant or his defense counsel. The letter to a member of this Court was to a member favoring his position after the fact and thus was not an impermissible communication attempting to influence a decision. The writing of the letters, however, standing alone, even though violative of Canon 3, does not dispose of the issue.

■ In a criminal proceeding, a ruling on a change of judge motion is discretionary; on review, a clear abuse of discretion must be shown. *Coates v. State* (1989), Ind., 534 N.E.2d 1087. Such abuse exists only where there is an undisputed claim of prejudice or where the judge has expressed an opinion on the merits of the controversy before him. *Id.* Here, the trial court denied harboring prejudice against appellant, and his opinion, as expressed in the letters, revealed more an antipathy toward being reversed on appeal than a prejudice against

appellant. These facts are thus distinguishable from those presented in appellant's cited case of *State ex rel. Neal v. Hamilton Circuit Court* (1967), 249 Ind. 102, 230 N.E.2d 775, where we mandated an additional change of judge after the first special judge remarked prior to trial "that [the relator] had been asking for it and got what he deserved by being held in contempt." *Id.* at 103, 230 N.E.2d at 775.

■ Moreover, even if the trial court's letters in the case at bar were to be construed as expressions of bias against appellant, prejudice, to be reversible, must be shown by the trial conduct of the judge and not merely inferred from his subjective views. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied,* (1986) 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723. Hence, as in *Smith v. State* (1985), Ind., 474 N.E.2d 71, 74, while perhaps "[these statements do] indicate that the trial judge had a predisposed opinion as to appellant's guilt at the state of the second trial ... [they do] not indicate whether the trial judge was able to conduct the trial impartially despite his personal opinion." We thus must turn to the instances of claimed prejudice during trial in order to resolve the issue.

■ Appellant contends that during the second trial the judge demonstrated bias, prejudice and hostility toward him, his defense and his counsel, resulting in the denial of a fair trial. A fair trial before an impartial judge is an essential element of due process; the trial court thus has the duty to remain impartial and refrain from making unnecessary comments or remarks. *Abernathy v. State* (1988), Ind., 524 N.E.2d 12. As reiterated by Chief Justice Shepard in *Abernathy,*

> [T]he jurors' customary respect for the judge "can lead them to accord great and perhaps decisive significance to the judge's every word and intimation. It is therefore essential that the judge refrain from any actions indicating any position other than strict impartiality."

*Id.* at 13 (quoting *Kennedy v. State* (1972), 258 Ind. 211, 226, 280 N.E.2d 611, 620–21).

Accordingly, in assessing the following instances of allegedly prejudicial conduct on the part of the trial court, our task is to discern whether the judge allowed his "disappointment" regarding our reversal of appellant's first conviction as expressed in the letters discussed above to be imparted to the jury via conduct tangibly partial to the State during the second trial.

During defense counsel's cross-examination of one of the arresting officers as to whether the officer found a beer can or bottle in appellant's car on the night of the crime, and after the officer had answered the same question twice in the same manner, the trial judge asked counsel to proceed. Later, defense counsel asked if the officer gave appellant a breathalyzer test to which he answered, "No." When counsel began to badger the witness on the subject, the trial court stated that the questioning was getting repetitious. Counsel objected to the judge objecting to his questions, and the judge informed him that the court could object and asked counsel to proceed. When defense counsel was cross-examining another officer, the court informed him the witness had already answered the question.

During direct examination of appellant, while he was explaining how he had discovered on one occasion that Bouche had lied about spending the night with another man, the judge interjected as follows:

THE COURT: [Defense counsel], I think a lot of these things are fine, but I realize these people were going together for four or five years. You don't have to have every confrontation they've had. Bring it up to '85 anyway and get this thing moving.

[Defense counsel]: I'll try to quicken it up as soon as possible.

THE COURT: I would appreciate it. There's no dispute about it. These people were going together through these years off and on and had some arguments of conflict. A little background's fine, but I don't think we have to go through every date or every argument.

Later, as defense counsel began his redirect examination of appellant, the judge stated, "Let's just keep it to nothing repetitious," and during the redirect, appellant paused at an emotional moment in describing his relationship with Bouche and the trial judge asked him to "please answer the question," which he did.

The State contends these instances amount to nothing more than permissible attempts by the trial court to expedite and control the flow of the trial, citing *Rowe v. State* (1989), Ind., 539 N.E.2d 474, and that in any event most of them were waived for lack of a contemporaneous objection. In *Rowe*, this Court found the judge's actions, "when placed in their trial context alongside like treatment of the prosecution," to "represent a rather even-handed if somewhat crusty approach by the trial court to keep the trial moving." *Id.* at 477. We agree with the State that the judge's conduct in the case at bar, although sometimes "crusty," did not reflect any animosity toward appellant or indicate to the jury his view as to appellant's guilt.

■ Appellant claims the trial court erred in denying his motion for separation of witnesses. At the beginning of the trial, appellant moved to separate witnesses and the State agreed to do so. However, as the conversation developed between counsel and the court, it became apparent that appellant's counsel had listed the parents of the victim among his witnesses. It became obvious to the trial court that appellant's counsel was not at all interested in calling the victim's parents as witnesses but had listed them for the sole purpose of excluding them from the courtroom on the motion to separate. When appellant's counsel was confronted with this fact, he nevertheless refused to relent in his position that they should be excluded from the courtroom, citing their extremely emotional behavior while seated directly in front of the jury during appellant's first trial.

■ When appellant's counsel took this position, the trial court then stated that he would deny the motion to separate. The primary purpose for separation of witnesses is to prevent them from gaining knowledge from the testimony of other witnesses and adjusting their testimony accordingly.

*Clark v. State* (1985), Ind., 480 N.E.2d 555. The trial court was correct in refusing to allow appellant's counsel to misuse the separation process. Nevertheless, the State voluntarily separated its witnesses and requested that the victim's parents sit at a distance from the jury. We find no error concerning the judge's ruling.

Appellant claims that, when one examines the cumulative effect of the judge's conduct throughout the trial, it becomes apparent that the judge was biased and prejudiced against him. However, we cannot say that any single act of the judge reflected bias and prejudice against appellant. Thus, when viewing the entire trial, we find no cumulative effect of misconduct. In the absence of abandonment of impartiality, we find no cause for the granting of a new trial. *See Spaulding v. State* (1989), Ind.App., 533 N.E.2d 597.

■ Appellant contends the trial judge erred in the manner in which he presented final instructions. It is true the trial judge did deviate from normal procedure in that final argument to the jury was made prior to the settling of instructions. There is no doubt that a better procedure is to settle the instructions prior to final argument in order that counsel may refer during their argument to the instructions to be given. The procedure followed by the trial court was not in keeping with Ind.Crim.Rule 8(B). As stated by the court of appeals in *Ash v. State* (1983), Ind.App., 455 N.E.2d 965, 967, "the preferred procedure is for final instructions to be completed prior to the beginning of final arguments." However, where no objection is made to a deviation from this procedure, there is no reversible error. *Morrison v. State* (1987), Ind., 516 N.E.2d 14. The record does not disclose that a contemporaneous objection was made to this deviation from procedure, nor did appellant's counsel object to the deviation when he entered his objections to the particular instructions into the record. The record does mention, however, that the parties did discuss some of the instructions with the trial court on the previous day, at which time defense counsel made an objection to an instruction that the State re-

quested be given. We see no reversible error on this subject.

■ Appellant claims the trial court erred in giving the State's modified Instruction No. 1, which instructed the jury that notwithstanding a finding that appellant had been provoked, they should determine whether a "sufficient time under the circumstances of the case for an ordinary man's passions to cool" existed. Appellant takes issue with the terminology "ordinary man" and claims that the true test should have been entirely subjective as to whether appellant did in fact "cool off." Appellant cites no authority for his position; in fact, the ordinary man standard was approved by this Court in *Johnson v. State* (1988), Ind., 518 N.E.2d 1073. The trial court did not err in giving this instruction.

Appellant contends the trial court erred in refusing to read his Tendered Instruction No. 6, which states: "the standard dealing with an ordinary man applies only to the determination of sufficient provocation. It does not apply to the nature of the reaction or response to the provocation." Appellant does not cite any authority for his position. However, he claims the State's reliance upon *Harlan v. State* (1985), Ind., 479 N.E.2d 569, is misplaced and does not support its position on the reasonable man test as far as reaction or response to the provocation is concerned. However, we cannot agree with appellant's argument and find no error in the refusal to give appellant's Tendered Instruction No. 6.

■ Appellant claims the trial court erred in refusing to read his Tendered Instructions Nos. 3, 4 and 5. Appellant's Tendered Instruction No. 3 would have instructed the jury that where a person shoots and fatally injures an innocent third party while seeking a person who had earlier provoked him, such act may constitute voluntary manslaughter. This of course is an incorrect statement of the law in that it totally omits the element of sudden heat and an opportunity for a cooling off period.

■ Appellant's Tendered Instruction No. 4 attempts to instruct on provocation

but states, *inter alia*, that although the fatal blow must be struck before passion has time to subside, it "need not be given immediately on provocation." Such a statement tends to confuse a proper instruction on sudden heat or the lack thereof. We see no error in the refusal to give appellant's Tendered Instruction No. 4.

■■ Appellant's Tendered Instruction No. 5 states that the law provides that the circumstances of finding one's loved one in bed with another person may constitute sufficient provocation if there is not ample time for passion to subside. In view of the fact that the trial court did give proper instructions concerning provocation and a cooling off period, we see no reversible error in the refusal to give appellant's Tendered Instructions Nos. 3, 4 or 5. *Johnson,* 518 N.E.2d 1073; *Smith v. State* (1984), Ind., 468 N.E.2d 512.

■■■ Appellant claims the trial court erred in excluding evidence that the decedent's family had made threats to Bouche. A trial court is afforded wide latitude in controlling cross-examination of witnesses. *Carter v. State* (1987), Ind., 505 N.E.2d 798. The issue for the jury's consideration in this case was whether appellant had killed the victim, and, if so, whether it was done in such sudden heat as to reduce the crime to manslaughter. The issue of whether Bouche had been threatened by the victim's family was collateral to the main issues of the case and its only possible relevance was of having an effect upon Bouche's testimony.

Bouche's testimony concerned facts which were not at issue in the case. The fact that appellant and Bouche had a long standing affair, the fact she was in bed with another man when appellant entered the room, the fact he killed the victim, and his conduct immediately thereafter, were not changed, nor were they likely to have been changed by any relationship Bouche had with the victim's family. The trial court did in fact permit evidence that the victim's family had filed a lawsuit against Bouche and that it was still pending at the time of appellant's trial. Appellant has failed to demonstrate to us any prejudice

from the court's ruling in this regard. We therefore see no abuse of the trial court's discretion in excluding the evidence. *Id.* at 800.

■■ Appellant contends the trial court erred in permitting the State to impeach the testimony of the psychologist called by appellant in that the court permitted the State to question the psychologist concerning his testimony in a prior highly publicized murder trial. On direct examination, appellant did of course go into the education, practice, and court experience of his expert witness. On cross-examination, the State delved further into his testimony at murder trials and his findings in those cases. Again, the trial court is permitted wide discretion in controlling such cross-examination. *Williams v. State* (1986), Ind., 492 N.E.2d 28. It is obvious the State was attempting to show that the witness had a bias against the State in murder cases. Evidence of bias is relevant to determine a witness's credibility. *Id.* It was entirely proper for the trial court to allow such cross-examination.

■■ Appellant claims the trial court erred in giving an instruction on voluntary intoxication. He points out that he had stipulated he was not raising the defense of intoxication as he had done in his first trial. However, appellant's counsel had extensively cross-examined officers as to appellant's state of intoxication, whether they had found beer cans or bottles in his car on the night he was arrested, and had questioned appellant concerning his state of intoxication that night. Given the state of the evidence, notwithstanding appellant's stipulation of no defense of intoxication, the jury could well have been confused about how they ought to consider evidence of appellant's possible intoxication. The instruction was a correct statement of the law on that subject and we find no prejudice to appellant in the giving of such an instruction under the circumstances. The trial court did not err in giving the instruction on voluntary intoxication.

Appellant lastly contends that the trial court's sentence of sixty (60) years is mani-

festly unreasonable. Appellant cites the fact that the trial court found him to be remorseful and further that appellant had apologized to the victim's family and friends; that during the lapse of time between his first and second trial, appellant had completed five credit hours toward an associate degree; that he was planning on enrolling in a correspondence course at Indiana University in hope of attaining a bachelor's degree; and further that he had a record of good behavior while institutionalized.

██ The standard sentence for murder is a fixed term of forty years, with not more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances. I.C. 35-50-2-3. Where, as here, the sentence imposed is authorized by the statute, this Court will not revise the sentence on appeal unless it is manifestly unreasonable. A sentence is not manifestly unreasonable unless no reasonable person could find the sentence appropriate to the particular offense and offender. Ind.Appellate Rule 17(B).

██ It is elementary that when, as here, a judge increases the basic sentence, the record must disclose what factors were considered to be mitigating and aggravating. *Gardner v. State* (1979), 270 Ind. 627, 388 N.E.2d 513. In fulfillment of this requirement, the court made the following record:

> Court finds the following factor as a mitigating circumstance: that the Defendant has no history of delinquency or criminal activity, or he has led a law-abiding life for a substantial period before the commission of this crime.

> Court finds the following factors as aggravating circumstances: the Defendant is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility; and that imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime. Court also finds as an aggravating circumstance, the facts and circumstances surrounding the crime itself as brought out in the trial of this case.

Based upon the foregoing assessment, the court added twenty years for aggravating circumstances. The only relevant and applicable aggravating circumstance identified in this order is the body of trial evidence, and it, standing in opposition to the weight of the mitigating circumstance, is clearly insufficient to warrant a twenty-year enhancement to the maximum sentence. A sixty-year sentence under this record is manifestly unreasonable.

Accordingly, we affirm appellant's conviction of murder but set aside the sentence and remand for the imposition of the standard forty-year sentence.

GIVAN, J., dissents with opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in that it modifies the sentence pronounced by the trial court. As set out in the majority opinion, the trial court considered both mitigating and aggravating circumstances and made a finding within the statute that the circumstances of the case supported an enhancement of the basic sentence by twenty (20) years. The record in this case fully supports the findings of the trial judge in this regard. I cannot justify this Court reweighing the evidence and coming to a different conclusion.

I would affirm the trial court in its entirety.